# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **FEMINIST MAJORITY FOUNDATION,** | ) | |
| | ) | |
| | ) | |
| **FEMINISTS UNITED ON CAMPUS,** | ) | Civil Action No. __3:17CV344__ |
| | ) | |
| **PAIGE MCKINSEY,** | ) | |
| | ) | |
| **JULIA MICHELS,** | ) | |
| | ) | |
| **KELLI MUSICK,** | ) | |
| | ) | |
| **JORDAN WILLIAMS,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ALEXIS LEHMAN**, | ) | |
|       *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNIVERSITY OF MARY WASHINGTON,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **RICHARD HURLEY,** | ) | |
| **Former President of University of Mary Washington**, | ) | |
| | ) | |
|       *Defendants*. | ) | |

## COMPLAINT
### (Jury Trial Demanded)

## PRELIMINARY STATEMENT AND INTRODUCTION

1.      This is a civil action brought under Title IX of the Education Amendments of

1972, 20 U.S.C. § 1681(a) ("Title IX"), and Fourteenth Amendment of the United States

Constitution, 42 U.S.C. § 1983, for declaratory, injunctive, and monetary relief for injuries that the Plaintiffs sustained while they were students at the University of Mary Washington ("UMW" or "the University") in Fredericksburg, Virginia, as a result of the University's systemic failure to protect them from a sexually hostile school environment, from sexual harassment carried out online, and from threats of physical and sexual violence, and, as a result of the University's failure to take immediate effective action to eliminate the sexually hostile environment, prevent its recurrence, and address its effects.

2.    Defendants UMW and Richard Hurley, former President of the University, condoned and ratified a sexually hostile environment at UMW by permitting ongoing, gender-based cyber-harassment and sexual harassment of members of Feminists United, a University group that is dedicated to educating the student body about gender-related issues and fighting for gender equality.  Members of Feminists United were repeatedly verbally assaulted and threatened through an anonymous social media app called "Yik Yak" and other posting sites because they spoke out about the increased incidence of sexual assaults involving fraternities nationwide.  The anonymous assailants also attacked the Plaintiffs online because they erroneously believed that Feminists United called for the University to suspend the men's rugby team over a 2014 incident in which rugby team members engaged in chants that called for violence against women, including rape and necrophilia.

3.    The University Administration, including Defendant Hurley, was informed repeatedly that Feminists United students feared for their safety as a result of more than 700 "Yaks," many of which were overtly sexist and/or threatening, posted about them collectively and individually.  Despite being put on notice that the students feared for their safety and were unable to concentrate on their schoolwork or otherwise enjoy the benefits of the University's

educational programs, Defendants took no action to investigate the reports of sex-based

harassment or take any steps to protect the Plaintiffs from its effects.

4.      In response to these complaints, and in clear violation of the University's legal

obligations under Title IX and the Equal Protection Clause of the U.S. Constitution, the

University's Title IX Coordinator sent an email to students informing them that the University

has "no recourse for such cyber bullying" and advising them that "if you find yourself the subject

of an abusive or threatening comment on social media, please immediately file a report so that

the site can take administrative action."  Defendant Hurley also ignored direct and urgent

requests from members of Feminists United to protect them and other students from threats of

physical and sexual violence, citing misguided concerns about the First Amendment rights of the

sexual harassers and cyber-bullies as a reason to do nothing.

5.      Defendants failed to report the threats of violence to law enforcement authorities

or even to attempt to identify the assailants, even though the University's wireless internet was

used to access Yik Yak, thereby facilitating the cyber assaults and threats, and the assailants'

conduct violated Virginia law.  In clear violation of their legal responsibilities under Title IX and

the Equal Protection Clause of the U.S. Constitution, University officials failed to take prompt

and effective steps reasonably calculated to end the threats of sexual violence, eliminate the

sexually hostile environment, prevent its recurrence, and, as appropriate, remedy its effects.

6.      Upon information and belief, the University also failed to provide adequate

training regarding campus sexual violence to its administrators, and has failed to handle past

complaints of sexual harassment and sexual violence appropriately and effectively, further

contributing to the "rape culture" that is promoted by the sexist Yik Yak posts and other forms of

sex-based bullying that women at UMW experience.  For example, past sanctions issued by the

University for sexual assault included, in at least one instance, a requirement that the assailant write an essay about the misconduct.

## JURISDICTION

7.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiffs are raising claims under the laws of the United States.

8.     UMW utilizes the various federal student aid programs that are authorized by Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 et seq. and 42 U.S.C. §§ 2751 et seq., and is therefore subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq.

9.     Venue is proper as the controversy involves conduct that primarily occurred in the Eastern District of Virginia.

## PARTIES

10.     The Feminist Majority Foundation, founded in 1987, is an organization dedicated to women's equality, reproductive health, and non-violence.  The Feminist Majority Foundation's research and action programs focus on advancing the legal, social, and political equality of women with men, countering the backlash to women's advancement, and recruiting and training young feminists to encourage future leadership for the feminist movement in the United States.  The Feminist Majority Foundation has a Feminist Campus Leadership Program through which it works with student groups and faculty on college campuses across the country to promote women's rights and equality.  One of the goals of the Leadership Program  is to eliminate campus sexual assault and to educate students about their rights under Title IX.  The Feminist Majority Foundation has affiliate campus groups all across the country, including the University of Mary Washington organization, Feminists United.

11.     Feminists United is a student-run organization at UMW that is dedicated to educating the student body about gender issues and fighting for gender equality.  During the period of 2014 through 2015, Feminists United had an Executive Board of approximately 10 members and a total membership of approximately 30 to 40 students.  As the group increased its visibility on campus and spoke out about sexual abuse and violence at UMW, the group and its members began to suffer a backlash in the form of escalating levels of sexist and sexualized comments, cyber-stalking and cyber assaults, and threats of physical harm posted anonymously on Yik Yak and other social media sites.

12.     Plaintiff Paige McKinsey was President of Feminists United at all times relevant to this Complaint and was a senior at UMW during the 2014-2015 school year.

13.     Plaintiff Julia Michels was a member of the Executive Board of Feminists United at all times relevant to this Complaint, and was a junior at UMW during the 2014-2015 school year.  Plaintiff Michels went on to serve as President of the organization during the fall 2015 semester.

14.     Plaintiff Kelli Musick was Vice President of Feminists United at all times relevant to this Complaint and was a senior at UMW during the 2014-2015 school year.

15.     Plaintiff Jordan Williams was a member of the Executive Board of Feminists United at all times relevant to this Complaint and was a junior at UMW during the 2014-2015 school year.

16.     Plaintiff Alexis Lehman was a member of the Executive Board of Feminists United at all times relevant to this Complaint and was a freshman at UMW during the 2014-2015 school year.

17.     Defendant University of Mary Washington is a state-funded university receiving federal funds, located in Fredericksburg, Virginia.  It is subject to Title IX of the United States Education Amendments of 1972 and is a state actor pursuant to the United States Constitution, and 42 U.S.C. § 1983.

18.     Defendant Richard Hurley was, at all relevant times, President of UMW.  He was UMW's policymaker and administrator with ultimate authority relative to the functioning and running of UMW, including with respect to all decisions concerning the environment maintained on campus.  At all relevant times, he had the power and authority to address Plaintiffs' complaints of sex discrimination, including their complaints about the sexually hostile campus environment at UMW, and provide them with relief.  Defendant Hurley responded with deliberate indifference to Plaintiffs' complaints regarding sex discrimination, including their complaints about the sexually hostile campus environment at UMW.  He is being sued pursuant to 42 U.S.C. § 1983 in his individual capacity.

## FACTUAL STATEMENT

19.     In September 2014, Feminists United members distributed leaflets about campus sexual assault to educate the campus community about the issue of sexual consent.  They distributed these leaflets for about two weeks.

20.     In November 2014, UMW's student senate voted on a motion in support of Greek life (i.e., the recognition of fraternities) on campus.  Feminists United members were active in the discussion and raised a number of issues concerning the well-documented relationship between fraternities and the incidence of sexual assaults on college campuses throughout the United States.  At a town hall meeting held after the motion passed the student senate, Plaintiffs McKinsey and Musick, the then-President of Feminists United, asked those in favor of Greek life

to address the studies and research that showed that Greek life on campus increased the number of sexual assaults on campus. Plaintiff McKinsey also raised questions about how the University would be able to address the issue, particularly since the University was not able to adequately support victims and survivors.

21.    After Plaintiff McKinsey spoke, students immediately started posting messages on Yik Yak about the issue. Yik Yak is an anonymous social media app that allows people to create and view messages, i.e., "Yaks," within a 1.5 mile radius. Students posted Yaks about the Greek life issue and Feminists United, including "this feminist needs to calm the hell down," and "these feminists need to chill their tits," and specifically calling Plaintiff McKinsey "scary." Later that day and evening, more derogatory Yaks were posted about "the feminists" and Feminists United using insulting and offensive words, such as "I fucking hate feminists and sour vaginas."

22.    On November 21, 2014, members of the Feminists United Executive Board – including Grace Mann, Plaintiff Michels, Plaintiff McKinsey, Sarah Palmer, and others – met with UMW's Title IX Coordinator, Dr. Leah Cox, regarding the Administration's sexual assault prevention policy and the need for a full-time Sexual Assault Coordinator. They discussed a past sexual assault of a member of Feminists United and the University's failure to resolve the issue in a prompt manner. The group explained that a full-time Sexual Assault Coordinator was necessary. They also told Dr. Cox that they were concerned that Associate Coordinator of Judicial Affairs, Marissa Miller, was not properly trained and was not effective in her role. Dr. Cox expressed a desire to work with them but indicated that it would be difficult for the University to appoint a full time coordinator.

23.     After the meeting with Dr. Cox, as the members of Feminists United were walking home, cars drove by and students yelled out angrily, "Fuck the feminists!"

24.     On November 23, 2014, Zakaria Kronemer, then a senior at UMW, texted Ms. McKinsey about a party he attended at which members of the men's rugby team performed a chant that advocated violence against women, including rape, murder, and necrophilia.  The chant included the lyrics, "Finally found a whore/she was right and dead/well God damn son of a bitch we're gonna get it in… Finally got it out/it was red and sore/moral of the story is never fuck a whore."  Mr. Kronemer recorded video of the chanting on his phone because "he was appalled by the violence and misogyny that was being expressed."  Fifteen to 20 people were chanting, and there were many others (including 15 to 20 women) who were also at the party. Following the chanting, a rugby team member stood on a table and angrily yelled that he wanted to hit a girl.  Mr. Kronemer confronted him and said that domestic violence was a serious issue and that his comments were offensive.  At that point, several members of the ruby team joined in making derogatory remarks to Mr. Kronemer, calling him, among other things, a "pussy."  Mr. Kronemer told the men that their behavior and attitudes about women contributed to a rape culture at Mary Washington.  The men then physically pushed Mr. Kronemer out of the party.

25.     In late November 2014, Mr. Kronemer informed the UMW Administration about the chant performed by some members of the rugby team ("rugby team chant") and provided a copy of the video recording to the Administration.

26.     On December 4, 2014, members of Feminists United met with Defendant Hurley and Dr. Cox to discuss the issue of sexual assault on campus and the offensive rugby team chant. Defendant Hurley stated he was disgusted by the chant and that action was being taken.

27.     On January 29, 2015, concerned about inaction by the UMW Administration in response to reported acts of discriminatory treatment of female students, Ms. McKinsey published an Op-Ed in UMW's student newspaper paper titled "Why UMW is not a 'feminist friendly campus.'"  The article discussed the retaliation that Feminists United faced on campus, including threatening Yaks and verbal harassment targeting "the feminists."  The Op-Ed also discussed the rugby team chant, describing it as a chant that referenced "violence against women, including murder and battery, sexual violence against women, including assault, necrophilia, and rape."  The Op-Ed concluded by asserting that Feminists United was not going anywhere and would not stop advocating on behalf of women.

28.     The Op-Ed elicited a strong reaction from the UMW community, as demonstrated by the numerous comments attached to the article, and led to an escalation of verbal assaults and cyber-attacks on members of Feminists United and others perceived to be feminists.

29.     On February 5, 2015, Plaintiff Musick published a second Op-Ed in UMW's student newspaper titled "Attacks Against Feminists United will not stop fight for change."  She detailed the anonymous attacks Plaintiffs Paige McKinsey and Feminist United had been subjected to based on their gender, once again putting Defendants on notice about the sexually hostile environment at UMW.

30.     On February 20, 2015, the President of the men's rugby team approached Plaintiff McKinsey in the UMW dining hall, accompanied by several other members of the rugby team. He introduced himself and asked her, "Are you Paige McKinsey, the one who wrote the Op-Ed?" She replied yes.  He tried to engage her in a dialogue about the Op-Ed, which but his tone and the fact that he was accompanied by several member of the rugby team was unsettling to her. Plaintiff McKinsey responded that she had said all she needed to in the Op-Ed, and asked him to

stop doing the chant.  The men did not respond, turned around and walked away.  In light of the hostility and sexually harassing messages directed at members of Feminists United, and Plaintiff McKinsey personally, over the prior three months, Plaintiff McKinsey found this encounter extremely unsettling.

31.     Later that day, Plaintiff McKinsey emailed Dr. Cox to tell her about the interaction with the rugby president:

> *"I also wanted to reach out to you to ask if you knew of any updates involving the rugby team chants.  Today the president of the rugby team along with other team members came up to me in Seaco.  They didn't do anything threatening, the president just said he would be fine to talk with me.  I told him I said what I needed to in my op-ed and asked that he stop doing the chants.  He didn't respond and then walked away. While this does not seem concerning at face value, when I couple this interaction with the anonymous yaks and comments made against me, situations like this make me feel deeply unsafe as I have no way of knowing if some of these men wrote those yaks or comments. I was just hoping to know that Administration is still planning on taking some sort of action."*

32.     On February 24, 2015, Dr. Cox informed Plaintiff McKinsey that she did not know specifically what was happening regarding the rugby team, but that the University was taking action.  Dr. Cox also stated that she would set up a mediated discussion between the rugby team and Feminists United after March 9, 2015.  Dr. Cox indicated that she thought the team would have a different perspective at that time.  From Dr. Cox's comments, Plaintiff McKinsey believed that the team would likely go through a sexual harassment workshop with Dr. Chris Kilmartin, a UMW Psychology Professor who had trained the military about sexual assault issues.

33.     On February 24, 2015, UMW Professor Meghan Conley, recognizing that the Yik Yak postings were creating a pervasive sense of fear among female students, emailed Feminists United members Plaintiff McKinsey, Filagot Taye, Bailey Meeks, Cara Wimberley and Kopper Carter about the Yik Yak issue.  She informed them that she wanted to organize three "listening

circles" to allow students to talk about their experiences with Yik Yak and other anonymous posting sites, with the goal to "raise awareness (especially among faculty and staff)" about what was happening.  She indicated that the circles would consist of 4-5 students discussing their experiences together and 8-10 students/staff/faculty/administrators listening to their stories.

34.    In addition to the attacks on women and Feminists United members, Professor Conley was also concerned about Yik Yak posts attacking UMW's Black Student Association, referring to its members as "niggers" and demanding that they "Go Back to Africa."  Similarly, Yik Yak posters disparaged UMW's Islamic Student Association, as well as Latino students in general.  Professor Conley advocated for a strong response from the Administration to these incidents of hostility on the basis of gender, race, and religion, but to no avail.

35.    On March 11, 2015, UMW held an open forum about sexual assault on campus. UMW's President, Vice President, and Provost were present.  Several students, including members of Feminists United, raised questions about the rugby team chant.  Defendant Hurley attempted to distinguish the rugby team chant from the recently publicized racist chant by students at a fraternity at the University of Oklahoma, who were expelled.  He remarked that if such a racist chant had happened at UMW, he would have suspended the individuals immediately.  His comment made clear that he did not view the sexist and threatening chant by the rugby players at UMW to rise to a similar level even though the chant advocated the rape and murder of women.  Defendant Hurley's comments were highly offensive to Plaintiffs and made clear to them that he and other UMW administrators did not understand their legal obligations under Title IX to maintain a campus environment free of sexual harassment and threats of violence.

36.     On March 12, 2015, three Feminists United Executive Board members met with Dr. Cox and asked again for an update about the rugby team.  Dr. Cox informed the group that while a sanction had been issued, the rugby team had appealed the sanction.  She indicated that a final decision would come down the following week.  Dr. Cox also noted that the Administration was still trying to decide whether to inform the student body of the sanctions.  Feminists United members advocated for transparency and full disclosure to the student body.  In response, Dr. Cox argued that the rugby team members had a right to privacy.

37.     On March 17, 2015, Plaintiff Michels emailed Defendant Hurley, informing him that Feminists United had decided to release the transcription of the chant to UMW's student paper, The Blue & Grey Press.  Plaintiff Michels explained that the group made this decision because the Administration had failed to act in response to the chant, despite having the recording for nearly four months.  Plaintiff Michels also criticized Defendant Hurley's statement that he would have suspended students if there was an incident similar to the one at the University of Oklahoma, noting "what happened at the University of Oklahoma has happened here . . . and yet [no one has been suspended]."  She also reminded him that members of Feminists United felt unsafe and the Administration had been on notice of that fact since February 20, 2015.

38.     Defendant Hurley responded to Plaintiff Michels' email later that evening, stating "I can assure you that I have been following the university's response to the off-campus incident."  He informed her that a hearing was held, sanctions were determined, and an appeal was filed and heard the day before.  He noted that a final decision would be made within two days.  He also remarked that he was unaware that any female students had advised the Administration on February 20, 2015, that they felt unsafe on campus (referring to Plaintiff

McKinsey's report to Dr. Cox following her encounter with members of the rugby team), but claimed that he took it "quite seriously."

39.     In the late afternoon of March 18, 2015, Defendant Hurley emailed Plaintiff McKinsey asking to meet with her and other members of Feminists United the next day, March 19, 2015, "to discuss with you the issues that you and your members are interested in learning about."

40.     Later in the day on March 18, 2015, Defendant Hurley sent an email to the UMW student body generally discussing UMW's efforts to end "sexual assault, violence against women, and other forms of discrimination and harassment that prevail in our society."  He noted that he was "aware of a recent situation in which our own students (groups and individuals) have engaged in behaviors that I find repugnant and highly offensive to members of our community." The email did not mention anything specific about the rugby team chant, or what behavior he considered to be "repugnant and highly offensive."

41.     That evening, Defendant Hurley met with Plaintiff McKinsey and other members of Feminists United, including Plaintiff Kelli Musick, Plaintiff Julia Michels, Grace Mann, Callie Dolloff, and Sarah Palmer, and they asked him why his email did not mention the rugby team chant specifically.  Defendant Hurley replied that he was following the advice of his lawyers and could not tell Feminists United what sanctions, if any, had been imposed against the rugby team. The members of Feminists United responded that a student's right to privacy should not trump another student's right to safety.  They also noted that his privacy concern appeared to be unreasonable given that Plaintiff McKinsey's Op-Ed, which discussed the rugby team chant, had over 1,000 views online and was a topic that had been widely discussed on campus.  Defendant Hurley responded that he would rather rely on the student "grapevine" to spread the word about

what happened with the rugby team and why.  The members of Feminists United warned him that the student grapevine was not reliable and was an improper way to convey such an important message, and would unfairly place blame on Feminists United for whatever happened.  Plaintiff McKinsey questioned Defendant Hurley about why the process had taken so long, given that the complaint about the rugby team chant had been made in November 2014, and she had contacted Dr. Cox in February 2015 about her fears for her physical safety and the increasingly sexually hostile environment at the University.  Defendant Hurley responded that he had no excuse for the delay and was sorry.

42.     On March 19, 2015, a UMW alumna posted a transcription of the rugby team chant on the Facebook page "Overheard – UMW."  Students expressed outrage at being kept in the dark about the incident and any response by the Administration.

43.     Later in the day on March 19, 2015, Defendant Hurley sent a more detailed email to the UMW student body to "provide additional information" about the chant performed by some members of the rugby team, noting that it contained "sexually explicit, derogatory, and violent language."  He explained that the disciplinary process had concluded on March 18, 2015, and that all rugby activities had been suspended indefinitely.  He further stated that each member of the rugby team was required to participate in training regarding sexual assault and violence.

44.     After Defendant Hurley's letter was received by the student body, there was an explosion of posts on Yik Yak, with sexist comments and threats directed at Feminists United, which was being blamed by many for the situation.  At least three students identified with Feminists United were mentioned by name in the Yaks:  Plaintiff Paige McKinsey, Plaintiff Kelli Musick, and Grace Mann.  The posts, which included physical and sexual threats, and identified

Plaintiff McKinsey's locations, were frightening to Feminists United members, and particularly to those who had been specifically named, including Plaintiff McKinsey and Ms. Mann.

45.     Some of the threatening Yaks posted included:  "Gonna tie these feminists to the radiator and [g]rape them in the mouth"; "Dandy's about to kill a bitch . . . or two"; and "Can we euthanize whoever caused this bullshit?"  Feminists and Feminists United were referred to in various posts as femicunts, feminazis, cunts, bitches, hoes, and dikes.  Plaintiff McKinsey was called out by name in numerous posts, including reporting her whereabouts on campus so that posters could "call her out in person."

46.     On March 23, 2015, the website Jezebel.com published an article about the rugby team chant and UMW's response to the incident.  The article discussed the lyrics of the chant, the "Yik Yak" comments targeting Feminists United, the Administration's delayed response to the situation, the rugby team's perspective, and the Administration's legal obligations under Title IX.

47.     On March 24, 2015, the Young Democrats Club posted on its list-serve that Plaintiff McKinsey from Feminists United would speak at the Club's meeting the following day. An anonymous Yak was posted immediately noting Plaintiff McKinsey's plan to attend the meeting and the poster's plans to confront her there, which made her extremely uncomfortable. Plaintiff McKinsey contacted campus police to report that she felt unsafe as a result of the post, and they sent a police officer to attend both the Feminists United and Young Democrats meetings held that night.

48.     On March 25, 2015, Plaintiff Michels sent an email to Defendant Hurley, Vice President Searcy, and Dr. Cox, noting the serious concern of the Executive Board of Feminists United for their safety and asking for a meeting.  The email stated:

> *To President Hurley, Vice President Searcy, and Dr. Cox,*
>
> *I am emailing you today to ask that you hold a meeting with the e-board of Feminists United regarding current events on campus.  After news of the men's rugby club's suspension was released to students, both unofficially and later officially, members of Feminists United have been threatened hundreds of times, both specifically by individual name, and as a club.  We have been threatened with both physical and sexual violence, and have had countless derogatory and misogynistic slurs directed at us, mostly through social media, though the majority of it has come through the anonymous posting app Yik Yak.  These are not just a few threats.  **Counting only what we have been able to document just in the past two weeks, we have nearly 200 examples of students using Yik Yak to post either violent, vitriolic hate or threats against us.**
>
> *While we fully support and agree with the administration's decision to suspend the men's ruby team, we are finding that much of the student body believes that Feminists United is somehow responsible for the sanctions handed down, and believe that some of that is a result of earlier lack of communication, as well as the rape culture that is rampant on our campus.  **Because of these things, many of us feel immensely unsafe at UMW, for even if none of these threats are acted upon, we have still been severely and relentlessly attacked emotionally and psychologically.  We also feel, unfortunately, that at this point, the administration has not done enough to support us, or to help handle the current situation.  It is our hope that we can meet with you to show you evidence of what has been occurring, and discuss possible ways that the administration could better involve itself in this ongoing issue, and help to halt the current hateful, divisive environment that has enveloped the school.  Please let us know as soon as possible when you might be able to meet, as this is a very serious and urgent issue.***

(emphasis added).

49.     On March 26, 2015, Feminists United Executive Board members Plaintiff McKinsey, Plaintiff Williams, and Plaintiff Michels met with Dr. Cox, Vice President Searcy, Associate Vice President and Dean of Student Life Cedric Rucker, and Marissa Miller to discuss the Yik Yak threats and the students' increasing fear for their personal safety.  They provided examples of some of the most offensive Yaks and explained how much the postings were affecting their safety on campus as well as their ability to concentrate on classes.  They requested that the University:

- Contact Yik Yak to have the app disabled for their location (which is made possible because of its geographic function);
- Ban Yik Yak from Apogee, UMW's Wi-Fi (forcing students who wanted to continue accessing the app to use their own internet access);
- Be more transparent and continuous in their communication;
- Clarify exactly what happened with the rugby situation, and explain that Feminists United had no role in the University's decision; and
- Require a mandatory assembly to explain rape culture and discuss harassment, cyber bullying and social media issues.

50.     The University failed to take the actions requested by Plaintiffs to remedy the sexually hostile environment.  Rather, on March 27, 2015, Dr. Cox sent an email to the student body and posted a statement on UMW's "Diversity and Inclusion" webpage regarding "cyber bullying."  She stated that she had received questions from students regarding how to handle abusive or threatening comments on social media, which she referred to as "a serious matter." She then went on to state:  "While the university has no recourse for such cyber bullying, Yik Yak and other social media sites do have control over the content and rules around the propriety of posts.  Should you find yourself the subject of an abusive or threatening comment on social media, please immediately file a report so that the site can take administrative action."

51.     Dr. Cox's statement that the school had no duty to address peer-on-peer sexual harassment or potential criminal conduct was in clear violation of Title IX and UMW's own policy statements which provide that "sexually based stalking, cyber stalking, and cyber bullying" are prohibited and considered a form of sex discrimination under Title IX.  Moreover, Dr. Cox's statement was demoralizing and disconcerting to the members of Feminists United, who were increasingly experiencing significant anxiety and fear on campus.

52.     On March 27, 2015, Plaintiff Michels sent an email to Dr. Cox, objecting to the email she sent to the University community.  Plaintiff Michels stated:

> *"I, along with several of my peers am disappointed in this email that was sent out today.  Several of us fear that the university has not been taking enough action on*

*its own, and has instead been relying on students to take actions that are very much the responsibility of the administration.  As we discussed in our meeting yesterday, can you tell me when we can expect to hear from you as to what the administration itself is doing to contact Yik Yak and address this problem?  It should not be the responsibility of students to prevent their own bullying, or to address threats aimed against them.  We ask that the university itself be the one to take the lead against this problem."*

53.     Because the Administration was taking no action, members of Feminists United did appeal directly to Yik Yak about the offensive and threatening posts, but received no response.

54.     Shortly thereafter, Vice President Searcy reached out to Plaintiff Michels and asked that she call him.  During the call, he explained that the University was considering holding some sort of assembly, but did not elaborate.  Dr. Searcy advised her that the University's lawyers told the Administration that they could not consider disabling Yik Yak on campus because of concerns about the First Amendment.  Plaintiff Michels responded that the First Amendment does not give individuals the right to issue threats to other students, and that other schools had successfully disabled Yik Yak on their Wi-Fi without any issues.  She reiterated that she and other students felt unsafe on campus and that the University needed to take remedial action.

55.     On March 30, 2015, a member of Feminists United sent an email to Defendant Hurley and Dr. Cox expressing her concern that the University was in violation of Title IX.  In this email, Feminists United once again put the University on notice that anonymous Yik Yak users, all of whom were within a 1.5 radius of the campus, had posted over 700 "hateful, threatening, degrading, and psychologically damaging" messages directed at Feminists United members.  She further stated:

*These posts have affected my mental health and ability to concentrate and feel safe at this school. We have evidence of these posts and have showed them to*

*administrators, and your response is to "report them to yik yak"? an app that was created by two fraternity guys? We have been trying to do this for months and this approach clearly has not worked in the slightest. You say this is a serious matter but the deafening silence of administration to take serious action is shameful. I should not have to put up with such hateful speech while trying to get an education.*

*As I am sure you are aware, title nine states that: "Schools are required to be prompt when receiving a complaint of sex discrimination, sexual harassment, or sexual violence in order to remedy any hostile educational environment created by such behaviors." However, I see no evidence of the school promptly taking our concerns into account, and I would like to know why that is, and more importantly, what you plan to do to take this seriously. If it is really your "first and foremost priority to create a respectful and safe environment where all of us can learn and grow", you would do so much more to address this problem of discrimination and hate."*

56.     On March 31, 2015, Feminists United, led by Grace Mann and Plaintiff McKinsey, organized and led a march to End Campus Rape.  After the march, a number of students, administrators (including Defendant Hurley, Vice President Searcy, and Dr. Cox), and campus police gathered outside of George Washington Hall to hear Feminists United members, including Plaintiff McKinsey, speak.  Plaintiff McKinsey spoke out about the threats that members of Feminists Untied faced on Yik Yak.  She stated that she had been the target of threats and directly addressed the individuals making the posts stating, "You can keep threatening me, you can keep threatening Feminists United – but I am not going to stop! Feminists United is not going to stop!"

57.     Also on March 31, 2015, Plaintiff Musick started a petition at Change.org, asking Defendant Hurley to "Address Rape Culture on Campus."  The petition, which garnered over 110 signatures, requested a meeting to discuss how the process could be handled better; asked for more transparency in communicating with the UMW community; again requested that Yik Yak be banned from being accessed via the University's Wi-Fi;

and asked that the University devote documented time and resources to the issue of sexual assault.

58.     At 2:14 a.m. on April 1, 2015, Plaintiff McKinsey, increasingly concerned about the threats she and other members of Feminists United had been receiving, emailed Defendant Hurley to remind him that Feminists United had requested that the Administration ban Yik Yak on the University Wi-Fi.  He responded that afternoon, advising her that the "Yik Yak question is complicated" and that he was asking several experts for advice.  He explained his reasoning as follows:

> *"On the one hand, UMW is an arm of the government because we are a taxpayer supported institution and thus bound by the First Amendment (Freedom of Speech) but, on the other hand, I certainly understand concerns about threats and feelings of safety on campus.  I have, however, cut and pasted a comment from a well-known activist group below to help answer the questions asked yesterday about why private colleges can remove YikYak and we can't.  FIRE's comment underscores what I mean when I said that I would have to be careful in taking an action that stifle's free speech.  I will get back to you with more information later.*
>
> *The Foundation for Individual Rights in Education argues, however, that while private institutions like Bucknell are not legally required to follow the First Amendment, even they are meant to be a place where freedom of expression is paramount."*

59.     Also on April 1, 2015, Dr. Cox emailed a member of Feminists United to thank her for expressing concerns about Yik Yak.  Echoing Defendant Hurley's comments to Plaintiff McKinsey, Dr. Cox noted that it was especially difficult for public institutions like UMW to take action against Yik Yak because "First Amendment rights allow individuals to express themselves without interference from the government."  She noted that other universities were facing similar challenges with Yik Yak on their campuses and advised her to contact campus police or her office if she felt threatened by "identified members of our community."  Once again, Dr. Cox made clear that UMW was unwilling to protect Plaintiffs from the online sexual harassment, sex-

based bullying, and threats they had been experiencing, despite being put on notice repeatedly

that the online harassment was creating a sexually hostile campus environment, which in turn

interfered with their educational pursuits.

60.     A member of Feminists United emailed the following response to Dr. Cox:  "I

know numerous institutions are having difficulties with Yik Yak, but my friends from other

schools who use the app were shocked at the posts at UMW that used names and threats and

bullying tactics. That is not normal.  More importantly, I'm sure you are also aware that

numerous schools have blocked the app from school Wi-Fi.  Why is our Administration

unwilling to do so?  First amendment rights do not absolve the consequences of threatening and

bullying people.  This is absolutely not okay."

61.     On April 2, 2015, Plaintiff McKinsey informed Defendant Hurley via email that

she was looking forward to hearing what his experts had to say about Yik Yak.  He responded:

"What I have to say is a reiteration of what I have said before: this is a complicated issue that has

significant First Amendment implications.  I refer you back to Dr. Cox for any further concerns

or questions you have related to Yik Yak or your safety."

62.     On April 8, 2015, Plaintiffs McKinsey and Michels and others met with

University officials at a "sharing circle" to discuss, once again, how disturbed they were by the

offensive and threatening Yaks.  Defendant Hurley and other members of the Administration

were present and once again heard concerns about how frightened Feminists United members

were of physical violence and sexual assault at UMW given the University's "rape culture,"

which they noted was being fueled by the sexist, sexualized, and threatening Yik Yak posts.

Plaintiff Michels once again reported to the Administration that Plaintiff McKinsey, Ms. Mann,

and Plaintiff Musick had been mentioned by name in the Yik Yak posts and were increasingly

scared about their safety.  Plaintiff Michels also described how her fear had led her to carry a

rape whistle, and how the threats and harassment had heightened her anxiety, as she did not

know if those who threatened and harassed them were sitting with them in class.  Plaintiff

McKinsey also talked generally about the threatening Yaks and the climate of fear they created.

Once again, the UMW Administration failed to act.

63.     On April 15, 2015, Feminists United members, including Plaintiffs McKinsey and

Michels, and others, met with University officials at another sharing circle to develop a set of

proposals to address the Yik Yak threats to which they and other members of the University

community had been subjected.  Professor Conley led a discussion of possible solutions,

including better training and more transparency and communication at all levels.  Dr. Cox

responded that such solutions would violate privacy rights, but offered no alternative solutions.

64.     On April 17, 2015, members of Feminists United, including Grace Mann,

attended a "Day of Silence" event aimed at raising awareness about the bullying of sexual

minorities.  Shortly after the event, Ms. Mann returned to her home, where she was murdered by

her roommate, Steven Vander Briel, a former member of the University's rugby team.[1]

65.     Shocked by the violent death of their friend and fellow activist after months of

harassment and aggression, and unaware at this time whether Ms. Mann's murder was related to

these events, a Feminists United member expressed the anger and despair that members had

about the Administration's inaction to date:

> *"What will it take for the Administration to take its students seriously?  The*
> *murder of one of the most passionate people at this school?  Why was nothing*
> *done to address the threats directed towards Grace and the rest of [Feminists*
> *United] BEFORE THIS TRAGEDY?  . . . You turned away when the members of*

---

[1] Mr. Vander Briel was arrested for Ms. Mann's murder within a few hours of the crime. After
standing trial on May 4, 2016, Mr. Vander Briel was convicted of abduction and first-degree murder, and
was subsequently sentenced to life in prison plus eleven years.

*[Feminists United] showed you 700 bullying and threatening posts. . . . .  My
friend was murdered today, and you did nothing to protect her even when you
were made aware of death and rape threats directed toward her."*

66.     Defendants never responded to that email, and the individual Plaintiffs, members

of Feminists United, and women throughout the campus continued to experience tremendous

fear for their safety given Defendants' failure to take corrective action in response to the threats

and hostility that created a sexually hostile environment on campus.

67.     On May 7, 2015, Plaintiffs, joined by the Feminist Majority Foundation, filed an

administrative complaint with the Department of Education's Office of Civil Rights ("OCR")

alleging that UMW violated Title IX by failing to adequately address the sexually hostile

environment created by persistent online harassment and threats.

68.     On May 8, 2015, Plaintiffs held a press conference at UMW to announce the

filing of the OCR Complaint.  A number of media outlets covered the press conference and

reported about the allegations made in the initial Complaint.  During the press conference,

members of Feminists United spoke about the sexually hostile environment at UMW and the

threats and harassment they faced on Yik Yak.  They also discussed their frustration with the

University's inaction to their complaints and concerns.  Further, they spoke out about their

ongoing concerns about their physical safety on campus as a result of the sexually hostile

campus environment they were forced to endure.

69.     On May 8, 2015, the University issued a public statement denying the allegations

in the OCR complaint and suggested that the Plaintiffs were make false accusations about the

University and its actions.  For many days after the press conference, anonymous posts appeared

on Yik Yak that made disparaging statements about Plaintiffs and accusing them, of among other

things, likely causing tuition increases at the University and harming UMW's reputation, to the

detriment of all students.  Once again, Plaintiffs became the target of harsh criticisms and

harassment in retaliation for filing their charge with OCR.  Defendants failed to take any type of

corrective measures.

70.     On June 8, 2015, Defendant Hurley sent a hostile letter to Feminist Majority

Foundation President Eleanor Smeal and forwarded it to the entire UMW community and the

media, including the Associated Press and The Washington Post.  This letter was posted in its

entirety on the websites of various media outlets.

71.     Defendant Hurley made a number of false statements regarding the allegations in

the initial OCR Complaint, in a blatant effort to disparage Plaintiffs and to retaliate against them

for filing their charge with OCR.  In particular, the letter falsely asserted that the initial OCR

Complaint drew a "troubling" connection between Ms. Mann's death and the Yik Yak threats

despite Feminists United's and its counsel's public statements to the contrary.  The letter also

falsely stated that neither the University nor Campus Police ever received any reports from Ms.

Mann (or other member of Feminists United) that she was being targeted by Yik Yak threats.

However, in late March 2015, Ms. Mann explicitly told her academic advisor that she had

reported targeted death and rape threats to Campus Police.  Moreover, at the March 31, 2015

March Against Rape Culture, with various administrators and campus police present, Plaintiff

McKinsey stated that she received threats on Yik Yak.

72.     Additionally, Defendant Hurley minimized the severity of Yik Yak threats

involving rape and murder and suggested that the Plaintiffs' concerns were exaggerated and

baseless.  He stated that the threats should be "placed in context" because they were derived

from various pop culture references.  His letter also erroneously claimed that Plaintiff McKinsey

was the only individual named in the Yik Yak posts.  As was his desired effect, the Associated

Press, The Washington Post, and other media outlets published Defendant Hurley's retaliatory attacks on Plaintiffs, causing them further emotional distress and fear of additional reprisals.

73.     In response to Defendant Hurley's letter, individuals once again began posting hostile comments on Yik Yak directed toward Feminists United, further contributing to a sexually hostile campus environment.  The posts expressed a sense of validation regarding the earlier posts along with a newfound sense of outrage toward Feminists United for filing their OCR charge.  They also baselessly criticized Plaintiffs for allegedly linking Ms. Mann's death to threatening Yik Yak posts – something they clearly had not done.

74.     Plaintiffs were subjected to harassing, hostile, and threatening Yaks and other social media posts throughout the summer of 2015.

75.     In July 2016, the Plaintiffs filed an amended complaint with OCR that included allegations about UMW's hostile and retaliatory conduct following the filing of their initial administrative complaint.  In May 2017, the Plaintiffs withdrew their administrative complaints and filed the instant action.

76.     As a result of the forgoing actions by Defendants, the Plaintiffs have suffered significant disruption to their college education and severe emotional harm.  Plaintiffs endured a sexually hostile environment for most of the 2014-2015 academic year, during which Defendants permitted violent, hateful sex-based harassment to go unchecked.  The vitriolic nature of the harassment caused the Plaintiffs to fear for their physical safety on campus, and the anonymous nature of the harassment intensified Plaintiffs' concerns, as they had no way of knowing which students harbored animosity against them and were therefore unable to take any steps to avoid interaction with the harassers.  Due to this sexually hostile environment, Plaintiffs suffered emotional and psychological harm that, in some cases, required professional treatment.  All of

the Plaintiffs also experienced disruption to their education and loss of the benefits of the educational experience, including decreased involvement on campus and decreased ability to enjoy social activities.

## CAUSES OF ACTION

### COUNT ONE

**Sex Discrimination in Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq. Against Defendant UMW**

77.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

78.     Title IX of the Education Amendments of 1972 ("Title IX")  provides in relevant part:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  A recipient has engaged in discrimination when it manifests deliberate indifference to discriminatory conduct directed at a student, of which it has actual knowledge.  Sexual harassment of a student by another student triggers a funding recipient's duties under Title IX to respond with appropriate corrective measures, and an inadequate response by a funding recipient to a complaint violates its responsibilities under Title IX.

79.     Defendant UMW manifested deliberate indifference to known acts of harassment when it refused to investigate the Plaintiffs' reports of persistent sex-based harassment and threats that created a hostile environment impairing their ability to obtain the benefits of their education.  In addition to taking no action against unlawful and potentially criminal conduct directed at female students, administrators expressly denied any duty to do so and thus ratified and emboldened the creators of the sexually hostile environment.

80.     Plaintiffs were subjected to harassment and threats because of their efforts to address sexism and sexual assault on campus.  The harassment began in November 2014, after Feminists United members spoke out about the increase in incidents of sexual assaults involving fraternities.  Students posted hostile comments about the Plaintiffs on Yik Yak, and verbally harassed individual members of the Feminists United leadership, including Plaintiffs McKinsey and Michels.  Later that month, Mr. Kronemer provided UMW administrators with a recording of members of the men's rugby team (and onlookers) singing a misogynistic chant at a party, and described how he was bullied when he made an objection.  Feminists United met with Defendant Hurley in December 2014 to discuss the issue and their concerns.  No immediate action was taken by the University.

81.     Following months without any apparent response to the sexually hostile chant, Plaintiff McKinsey published an Op-Ed in the school's student newspaper titled "Why UMW is Not a 'Feminist Friendly Campus,'" in which she specifically noted the threatening Yaks, verbal harassment and the rugby team chant.  Comments submitted to the online article included verbal attacks on Plaintiffs and others perceived to be feminists.  Plaintiffs found the derogatory, sexist, and threatening postings to be offensive and humiliating.  University administrators knew or should have known about the comments posted to the online school newspaper site, yet continued to take no steps to address the harassing and retaliatory posts.

82.     UMW administrators had actual knowledge of sex-based harassment against the Plaintiffs beginning in February 2015.  At that time, Plaintiff McKinsey wrote to Dr. Cox following an encounter with members of the men's rugby team and stated, "While this does not seem concerning at face value, when I couple this interaction with the anonymous yaks and comments made against me, situations like this make me feel deeply unsafe as I have no way of

27

knowing if some of these men wrote those yaks or comments." Several days later, Dr. Cox offered to set up a "mediated discussion" between the rugby team and Feminists United the following month, but otherwise took no action in response to Plaintiff McKinsey's report of harassment.

83. Plaintiffs also apprised Defendant Hurley of the sexually hostile environment on two occasions. On March 17, 2015, Plaintiff Michels emailed Defendant Hurley to inquire about the Administration's inaction regarding the rugby team chant and to remind him that members of Feminists United continued to feel unsafe on campus, as they had previously advised Dr. Cox in February. The next day, after Defendant Hurley notified the student body about sanctions against the rugby team, Plaintiffs met with him in person and again noted the hostile environment they were experiencing.

84. In the absence of any measures by University administrators to address the harassment already underway, the hostile environment only worsened following news of the rugby team sanctions. UMW students posted a barrage of hostile, sexist, and threatening posts on Yik Yak, directed primarily at Feminists United and its supporters, and mentioning Plaintiffs McKinsey and Musick by name. The posts, which included physical and sexual threats, and identified Plaintiff McKinsey's location at various times, caused her to fear for her safety.

85. Due to the increasingly hostile environment, Plaintiffs' ability to participate in or benefit from the school's educational programs was severely limited. Plaintiffs were deterred from leaving their homes, attending classes, or participating in University events out of fear that students would subject them to additional harassment and perhaps act on their threats of physical and sexual assault.

86.     Plaintiff Michels reported the escalating harassment and its effects to Defendant

Hurley, Vice President Searcy, and Dr. Cox by email on March 25, 2015.  The email noted the

threats of physical and sexual violence, the "countless derogatory and misogynistic slurs directed

at us," and the fact that "many of us feel immensely unsafe at UMW."  The next day, Plaintiffs

met with Administration officials to reiterate their concerns and provide examples of some of the

most offensive and threatening Yaks.  The students expressly requested that the University take

steps to address and prevent the sex-based harassment, including disabling the app at UMW or

banning Yik Yak from the school Wi-Fi network.

87.     Although the harassment created a sexually hostile environment in violation of

Title IX (and comprised violations of both the criminal laws of Virginia and the UMW Code of

Conduct), the University took no steps of any kind to investigate the Plaintiffs' reports, nor did it

make any meaningful attempt to stop the harassment or correct its effects.  Dr. Cox asserted that

UMW had "no recourse for such cyber bullying," and directed members of Feminists United and

others in the student body who felt harassed on social media to contact Yik Yak directly.

88.     Over the ensuing weeks, UMW students continued posting hateful and

threatening Yaks directed at the Plaintiffs, and Plaintiffs continued to petition administrators for

protection.  In addition to numerous emails, a petition, and multiple meeting requests, Plaintiffs

also reported the harassment in detail at "listening circle" meetings on April 8 and 15, 2015,

where Defendant Hurley and other Administration officials were in attendance.  Plaintiffs and

other targets of the harassment reported that they were frightened to be on campus as a result of

the hateful, violent statements and threats and expressed their severe distress.

89.     Notwithstanding actual knowledge of a sexually hostile environment targeting

female students who advocated for gender equality, Defendant Hurley and other members of the

Administration continued to take the position that they could do nothing about Yik Yak, citing

First Amendment concerns and the position of FIRE (Foundation for Individual Rights in

Education), an organization that essentially defends verbal harassment on campus based on free

speech grounds.  The University took no steps of any kind to investigate the identity of students

who were creating a sexually hostile environment, or to address the ways in which that

environment could be prevented going forward.  Administrators instead ratified the "right" of

angry students to target female classmates with hateful, sexist, threatening harassment, free from

any disciplinary consequences.

90.     This sexually hostile environment continued unabated throughout the summer of

2015.

91.     As a direct and proximate result of the University's practices detailed above that

were sufficiently severe to interfere with Plaintiffs' ability to participate in and enjoy the benefits

of the educational services offered by UMW, and as a direct and proximate result of the

University's deliberate indifference to the Plaintiffs' right to be free from sex discrimination,

including sex-based harassment, Plaintiffs were denied access to a safe and secure educational

environment in violation of Title IX, and were otherwise injured.

## COUNT TWO

**Retaliation in Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq. Against Defendant UMW**

92.     Plaintiff incorporates all preceding paragraphs into this Count by reference as

though fully stated herein.

93.     Title IX, 20 U.S.C. § 1681, prohibits retaliation by a funding recipient against any

individual who engages in activity protected by Title IX, making it unlawful for an educational

institution receiving federal funds that knows of protected activity to engage in action that is

materially adverse to the individual engaging in the protected activity. Title IX places funding recipients on notice that they may be liable for their failure to respond to the discriminatory acts of certain non-agents.

94. Plaintiffs engaged in protected activity when they advocated against sexual assault and sex-based violence at UMW, and when they reported sex-based harassment by their peers, putting Defendant UMW on notice of its responsibility to treat the Plaintiffs in accord with its obligations under Title IX, including but not limited to its obligation not to engage in retaliation or condone retaliatory acts against the Plaintiffs by non-agents over which it had a right and duty to control.

95. Defendant UMW had an obligation under Title IX to exercise control over students engaging in sexual harassment and to take appropriate disciplinary action against harassers for their creation of a sexually hostile environment that violated the provisions of the Student Code of Conduct, the criminal laws of the state of Virginia, and Title IX.

96. Defendant UMW was placed on notice by Plaintiffs that they were being subjected to harassment, including retaliatory harassment, through numerous emails, private meetings, and public meetings. Defendant UMW failed to take any action against UMW students engaged in harassment in retaliation against the Plaintiffs, and the position of school administrators in fact ratified a "right" to engage in sex-based harassment.

97. This retaliatory harassment continued unabated throughout the summer of 2015.

98. By choosing to permit the harassment to go unaddressed and unpunished, and, thereafter, choosing to allow the escalated attacks to proceed without consequence, Defendant UMW became liable for the acts of retaliation against the Plaintiffs and responsible for the clear and direct violation of the Plaintiffs' rights under and pursuant to Title IX.

99.     Defendant UMW also engaged in direct retaliatory conduct against Plaintiffs by sending the hostile June 8, 2015 letter to Ms. Smeal and forwarding it to the entire UMW campus community and the entire press corps.  With this public statement, Defendant UMW attempted to intimidate and threaten Plaintiffs by making a number of false accusations regarding their motivations for filing a Title IX complaint.  The letter was intended to publicly shame and disparage Plaintiffs by falsely stating that they attempted to link Ms. Mann's death to the threatening Yaks—despite numerous public statements to the contrary.  Defendant Hurley also attempted to minimize the severity of the Yik Yak threats by erroneously claiming that Plaintiff McKinsey was the only individual mentioned by name in the Yaks and suggesting that rape and murder threats be "placed in context."

100.    As a direct and proximate result of the University and Defendant Hurley's actions and decisions detailed above that were sufficiently severe to interfere with the Plaintiffs' ability to participate in and enjoy the benefits of the educational services offered by UMW, Plaintiffs were denied access to a safe and secure educational environment in violation of Title IX and were otherwise injured.

## COUNT THREE

**Violation of Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause (Against Dr. Richard Hurley, in his individual and official capacities and Against the University of Mary Washington)**

101.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

102.    Plaintiffs had rights to the equal protection of the law, regardless of their gender, pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, including the right to be free of sexual harassment and a sexually hostile campus environment.

103.    Defendants are liable for deliberate indifference to discriminatory conduct directed at Plaintiffs based on Plaintiffs' gender and thus treated Plaintiffs differently from male students at the University of Mary Washington.

104.    By tolerating and thus encouraging gender discrimination against Plaintiffs, including a sexually hostile campus environment, Defendants Hurley and the University of Mary Washington individually and/or collectively, have violated Plaintiffs' clearly established rights to Equal Protection of the Fourteenth Amendment of the United States Constitution to be free from sex-based discrimination under color of state law.

105.    As a direct result of the actions, statements and/or policies of the Defendants, Plaintiffs have suffered an unconstitutional deprivation of their rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

106.    Defendants acted intentionally and with callous disregard for Plaintiffs' known statutory and constitutional rights.

As a direct and proximate result of the Defendants' violations of Plaintiffs' statutory and constitutional rights as described herein, Plaintiffs have suffered severe and substantial damages. These damages include loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs pray this court for the following relief:

1.    Enter a judgment in Plaintiffs' favor and against Defendant University of Mary Washington for discrimination on the basis of sex in violation of Title IX, 20 U.S.C. § 1681;

2.      Enter a judgment in Plaintiffs' favor and against Defendant University of Mary Washington for retaliation in violation of Title IX, 20 U.S.C. § 1681;

3.      Enter a judgment in Plaintiffs' favor and against Defendants Dr. Richard Hurley and University of Mary Washington for violations of Plaintiffs' rights under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

4.      Enter an order for injunctive relief against Defendant University of Mary Washington;

5.      Award Plaintiffs compensatory damages in an amount to be proven at trial for the pain and suffering, damage to education, career, and loss of enjoyment of life that they have experienced as a result of Defendants' unlawful conduct;

6.      Award reasonable attorneys' fees, litigation expenses, and costs; and

7.      Grant such other and further relief and the Court may deem appropriate.

**PLAINTIFFS DEMAND TRIAL BY JURY pursuant to Rule 38 of the Federal Rues of Civil Procedure on all issues so triable.**

Respectfully submitted,

**FEMINIST MAJORITY FOUNDATION, FEMINISTS UNITED ON CAMPUS, PAIGE MCKINSEY, JULIA MICHELS, KELLI MUSICK, JORDAN WILLIAMS, and ALEXIS LEHMAN**


Debra S. Katz
Katz, Marshall & Banks, LLP
1718 Connecticut Avenue, N.W.
Sixth Floor
Washington, D.C. 20009
Telephone: (202) 299-1140
Fax:  (202)299-1148
katz@kmblegal.com

Lisa J. Banks
Katz, Marshall & Banks, LLP
1718 Connecticut Avenue, N.W.
Sixth Floor
Washington, D.C. 20009
Telephone: (202) 299-1140
Fax:  (202)299-1148
banks@kmblegal.com


*/s/ Tim Schulte*_____
Tim Schulte (VSB No. 41881)
SHELLEY CUPP SCHULTE, P.C.
2020 Monument Avenue, First Floor
Richmond, Virginia 23220
Telephone: (804) 644-9700
Fax: (804) 278-9634
schulte@scs-work.com

*Counsel for Plaintiffs*