IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FEMINIST MAJORITY FOUNDATION et al.,
    Plaintiffs,

v.                                                            Civil Action No. 3:17-cv-00344-JAG

UNIVERSITY OF MARY WASHINGTON et al.,
    Defendants.

## OPINION

This case arises from the cyberbullying of a student-run feminist organization at the University of Mary Washington ("UMW"). The cyberbullying occurred primarily through a social media smartphone application called Yik Yak. Yik Yak allowed users to anonymously share messages—called "yaks"—with other users within a certain radius (e.g., with users at or around UMW). Other users could then anonymously comment on yaks or could vote up or down on the yaks. During the 2014–2015 school year, users on Yik Yak harassed the plaintiffs by posting insulting, derogatory, and threatening yaks. The plaintiffs complained to UMW about the harassment, and eventually filed a complaint against UMW under Title IX.

The plaintiffs have now sued UMW, along with its current and former presidents, for violations of Title IX and the Equal Protection Clause. The defendants have moved to dismiss. Because UMW has limited, if any, control over Yik Yak, the plaintiffs' Title IX discrimination claim fails. Their Title IX retaliation claim fails because UMW took no retaliatory action against the plaintiffs. Finally, because no constitutional violation occurred, let alone a clearly establish

or continuing violation, the plaintiffs have not stated claims under the Equal Protection Clause. Accordingly, the Court will grant the defendants' motion to dismiss.[1]

## I. BACKGROUND

During the 2014–2015 school year, the five individual plaintiffs were students at UMW, a public university that receives federal funds. The individual plaintiffs served on the executive board of Feminists United on Campus ("Feminists United"), a student-run organization "dedicated to educating the student body about gender issues and fighting for gender equality." (Am. Compl. ¶ 11.) Feminists United is an affiliate of the Feminist Majority Foundation (the "FMF"), an organization "dedicated to women's equality, reproductive health, and non-violence." (Am. Compl. ¶ 10.)

In late 2014 and early 2015, members of Feminists United spoke out about different campus happenings that implicated issues important to their organization, such as sexual assault and violence against women.[2] After Feminists United spoke out, users on Yik Yak began posting insulting and derogatory yaks about Feminists United and its individual members.[3] These posts, together with a handful of in-person encounters, made members of Feminists United

---

[1] The plaintiffs requested to amend their complaint to correct a clerical error, but the proposed change does not affect the Court's reasoning, so their request is denied.

[2] One such happening involved the men's rugby team. At a party that included some members of the men's rugby team, a student filmed partygoers performing a derogatory chant that advocated for violence against women, including rape, murder, and necrophilia. The student provided a copy of the recording to UMW, and told a member of Feminists United about the chant. One member of Feminists United mentioned the chant in a newspaper opinion piece about why UMW was not a "feminist friendly campus." After hearing nothing about the team's punishment, Feminists United continuously followed up with the administration on what action UMW planned to take against the rugby team. Eventually, UMW punished the team by suspending men's rugby activities indefinitely, and by requiring all members to participate in sexual assault training. The plaintiffs disagree with how UMW handled the situation.

[3] For example, some yaks said "these feminists need to chill their tits" and "I fucking hate feminists and sour vaginas." (Am. Compl. ¶ 22.)

2

feel unsafe on campus. Feminists United reported the posts and encounters to the UMW administration, including then-president Richard Hurley, multiple times. The members also reported feeling unsafe multiple times.

Waves of cyberbullying against Feminists United and its members continued throughout the spring of 2015. In some instances, the yaks included threats of physical and sexual violence,[4] and some mentioned members of Feminists United by name. Some yaks included a member's location on campus so that people could confront her in person. These posts frightened members of Feminists United. One member reported her discomfort to campus police, who sent a police officer to attend both a Feminists United meeting and another meeting a yak had identified as one that the member planned to attend.

UMW organized some "sharing circles" to discuss Yik Yak at UMW. In addition to the yaks directed at Feminists United and its members, other students and student groups at UMW were experiencing cyberbullying through Yik Yak, including African American, Islamic, and Latino students.

Unhappy with UMW's responses both to the posts and to other events on campus, Feminists United asked to meet with the administration to express their concerns and to explain their increasing fear for their personal safety. Feminists United requested that UMW, among other things, disable Yik Yak on campus and ban Yik Yak from UMW's wireless network. UMW told Feminists United that they could not consider disabling Yik Yak because of First Amendment concerns.

---

[4] Different yaks referred to Feminists United and its members as "femicunts," "feminazis," "cunts," "bitches," "hoes," and "dikes." (Am. Compl. ¶ 46.) Other posts included threatening language: "Gonna tie these feminists to the radiator and grape them in the mouth"; "Dandy's about to kill a bitch . . . or two"; "Can we euthanize whoever caused this bullshit?". (Am. Compl. ¶ 46.)

3

In May 2015, Feminists United and its members, joined by the FMF, filed an administrative complaint with the Department of Education's Office of Civil Rights ("OCR"), alleging that UMW violated Title IX "by failing to adequately address the sexually hostile environment created by persistent online harassment and threats." (Am. Compl. ¶ 68.) The plaintiffs held a press conference at UMW the next day. After the press conference, UMW issued a public statement that allegedly denied the allegations in the OCR complaint and suggested that the plaintiffs made false accusations about UMW and its actions. In the days that followed, anonymous users posted more disparaging and harassing statements against Feminists United on Yik Yak.

On June 8, 2015, President Hurley sent a letter to the FMF (the "June 8 Letter"), responding to some of the allegations in the OCR complaint. Hurley published this letter with various news outlets. In the letter, Hurley detailed UMW's actions in response to Feminists United's concerns and explained the First Amendment concerns involved with banning Yik Yak. He commented that some of the yaks "were certainly offensive and alarming in isolation, but must be placed in context." (*See* Am. Compl. ¶ 73.)[5] Anonymous Yik Yak users continued to post hostile and harassing comments about Feminists United and its members after the publication the June 8 Letter and throughout the summer of 2015.

---

[5] *See also UMW President Richard Hurley's Letter to Feminist Majority Foundation,* FREDERICKSBURG.COM (June 8, 2015), http://www.fredericksburg.com/news/education/umw-president-richard-hurley-s-letter-to-feminist-majority-foundation/article_91ad966c-0e14-11e5-b5b2-e3469289a8dd.html.

## II. DISCUSSION[6]

The plaintiffs[7] allege four counts in their complaint: (1) sex discrimination in violation of Title IX, brought against UMW; (2) retaliation in violation of Title IX, brought against UMW; (3) violation of the Equal Protection Clause, brought against President Hurley in his individual capacity pursuant to 42 U.S.C. § 1983; and (4) violation of the Equal Protection Clause, brought against Troy Paino, current president of UMW, in his official capacity pursuant to § 1983. The defendants have moved to dismiss all counts.

### A. Title IX

Title IX prohibits sex-based discrimination in certain educational institutions that receive federal funds. 20 U.S.C. § 1681(a).[8] For violations, the Supreme Court has recognized an implied private right of action against the funding recipient. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979).

---

[6] The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007)).

[7] The defendants challenge whether four of the seven plaintiffs have standing to sue. Because some of the plaintiffs have standing, and because all of the claims fail on the merits, the Court need not decide the issue.

[8] "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Section 1681(a) contains some exceptions not at issue in this case.

The plaintiffs have sued UMW for both Title IX discrimination and retaliation.

*1. Discrimination*

To establish a Title IX claim, a plaintiff must show that a funding recipient acted with deliberate indifference to known acts of sexual harassment so severe, pervasive, and offensive that the harassment deprived the plaintiff of access to educational opportunities or benefits. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). This standard focuses on the funding recipient's actions or inactions—not the actions of third parties. *Id.* at 640. Further, the Supreme Court has limited a funding recipient's liability under Title IX to circumstances where the recipient *can* take action—that is, to circumstances where the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. *Id.* at 645.[9] Liability attaches only where the recipient's response, or lack of response, to the harassment "is clearly unreasonable in light of the known circumstances." *Id.* at 648.

When considering actions taken by a funding recipient in response to known harassment, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648. The plaintiff cannot make particular remedial demand. *Id.* Overall, the Supreme Court describes the standard for liability under Title IX as "sufficiently flexible to account both for the level of disciplinary authority available to the school and for the potential liability arising from certain forms of disciplinary action." *Id.* at 649. "A university might not, for example, be expected to exercise the same degree of control over its students that a grade

---

[9] *See Nungesser v. Columbia Univ.*, ___ F. Supp. 3d ___, No. 1:15-CV-3216-GHW, 2017 WL 1135647, at *16 (S.D.N.Y. Mar. 24, 2017) (noting that a university does not have control over postings made on social media websites such as Facebook, Twitter, and Tumblr, but may have control over comments made by students on the university's online student newspaper and news blog).

6

school would enjoy, and it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." *Id.*

In this case, the Title IX discrimination claim fails because the harassment took place in a context over which UMW had limited, if any, control—anonymous postings on Yik Yak.[10] Nevertheless, UMW attempted to take some action, such as holding sharing circles to discuss the issue of cyberbullying.[11] Further, when a yak targeted a member of Feminists United specifically and made her feel unsafe attending meetings on campus, a UMW police officer attended the meetings. While UMW did not take the specific action requested by the plaintiffs, Title IX does not require funding recipients to meet the particular remedial demands of its students. This holds true especially where some of the actions requested—such as banning Yik Yak from the campus wireless network—may have exposed the university to liability under the First Amendment. For these reasons, the plaintiffs have failed to state a plausible Title IX discrimination claim.

## 2. *Retaliation*

The Supreme Court has recognized that retaliation constitutes a form of discrimination under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). To state a claim for Title IX retaliation, the plaintiff must prove that a funding recipient retaliated against her because she complained about sex-based discrimination. *Id.* at 184. Examples of forms of retaliation recognized by courts include adverse employment actions where the plaintiff worked

---

[10] Further, because users post anonymously, UMW may not have had control over the harassers. Nevertheless, at the motion to dismiss stage, the Court will make the reasonable inference that many of the yaks came from students because of the location-based nature of Yik Yak.

[11] Although not directly related to the threatening yaks, UMW also took steps to punish the men's rugby team for the offensive chant. While the plaintiffs may disagree with how UMW responded to the rugby team chant, UMW's actions related to the chant do not support the plaintiffs' claim of deliberate indifference under Title IX, especially seeing as the chant did not target Feminists United or any of its members.

7

for the funding recipient,[12] and adverse educational actions, such as expulsion.[13] The Supreme Court has recognized retaliation as a form of discrimination in part because retaliation "is easily attributable to the funding recipient," distinguishing retaliation from cases based on the recipient's deliberate indifference to reports of harassment by third parties. *Id.* at 183.

Here, the only action that UMW took after the plaintiffs filed their OCR complaint was President Hurley publishing the June 8 Letter.[14] Through the June 8 Letter, however, UMW, through Hurley, took no action against the plaintiffs. Hurley simply responded to the OCR complaint. This does not rise to the level of a retaliatory action. Accordingly, the Court dismisses the Title IX retaliation claim.

### B. Equal Protection Clause

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To survive a motion to dismiss an equal protection claim on a disparate treatment theory,[15] "a plaintiff must plead

---

[12] *Jackson*, 544 U.S. at 172 (school took away coaching duties from a teacher); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012) (department at a school fired student from employment position).

[13] *Emeldi v. Univ. of Or.*, 698 F.3d 715, 725–26 (9th Cir. 2012) (professor resigned as a graduate student's advisor, which prevented the student from getting a degree); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) (professor reported a student for cheating, and then the school expelled the student).

[14] The plaintiffs also complain of the continued harassment through Yik Yak after they filed their OCR complaint. The plaintiffs do not allege, however, that UMW wrote the yaks. Because UMW did not take these actions, a retaliation claim based on these actions fails.

[15] The plaintiffs argue that they proceed on a sexual harassment theory, not a disparate treatment theory. The plaintiffs rely on *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994). In *Beardsley*, after referring to the Equal Protection Clause, the Fourth Circuit held that "intentional sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983." *Id.* at 529. The Fourth Circuit applied "the standards developed in Title VII litigation to similar litigation under § 1983." *Id.* The court then cited to cases about sexual harassment creating a hostile work environment under Title VII. *Id.* Without further citation, the plaintiffs seem to argue for use of the standard for a Title IX discrimination claim—deliberate indifference—when evaluating a § 1983 claim alleging sex-

sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011).

In this case, the plaintiffs have not alleged that UMW treated them differently than any other similarly situated students, or that UMW acted with any sort of discriminatory animus. Indeed, the plaintiffs allege that other students and student groups at UMW also experienced cyberbullying through Yik Yak. Because the plaintiffs have failed to state plausible equal protection claims, the Court will grant the motion to dismiss those claims.

Nevertheless, even if the plaintiffs had stated plausible claims for violations of the Equal Protection Clause, these claims fail because the named defendants are immune from liability.

Count III, brought against President Hurley in his individual capacity, fails because qualified immunity protects Hurley from liability. Qualified immunity protects government officials from liability under § 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, the constitutional right that Hurley allegedly violated was not clearly established. Accordingly, the Court could also grant the motion to dismiss Count III based on qualified immunity.

Count IV, brought against President Paino in his official capacity under *Ex Parte Young*,[16] fails because Eleventh Amendment immunity protects Paino from liability. *Ex Parte*

---

based harassment in schools. The Court does not agree that this standard applies. To the extent it does, however, the plaintiffs' equal protection claims fail for the same reasons that their Title IX claims fail, because UMW did not act with deliberate indifference in response to the plaintiffs' complaints.

[16] 209 U.S. 123 (1908).

9

*Young* provides a limited exception to the Eleventh Amendment bar on suits against states.[17] *Lytle v. Griffith*, 240 F.3d 404, 408–09 (4th Cir. 2001). Specifically, *Ex Parte Young* permits suits against state officers acting in their official capacity, and applies when the plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). In this case, the plaintiffs likely do not allege an ongoing violation of federal law.[18] The events in this case occurred in the 2014–2015 school year; the plaintiffs do not allege ongoing harassment. Indeed, Yik Yak has since shut down its services.[19] Further, the plaintiffs do not seem to seek prospective relief that would redress the alleged violation. Thus, the Court could also grant the motion to dismiss Count IV based on Eleventh Amendment immunity.

### III. CONCLUSION

As social media has proliferated, cyberbullying has become a national problem. This holds especially true in situations where bullies can hide behind the cloak of anonymity, a protection that the traditional schoolyard setting did not afford. Solutions are not easy or obvious to anyone. In seeking solutions, however, schools cannot ignore other rights vital to this country, such as the right to free speech.

As to this case, for the reasons stated, the Court grants the defendants' motion to dismiss.

---

[17] A suit brought against a state official in his official capacity is really a suit against the state. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[18] *See DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999) (holding that *Ex Parte Young* does not apply where the alleged violation occurred entirely in the past, and that mere conjecture that a similar violation may happen in the future cannot "transform a one-time event into a continuing governmental practice or an ongoing violation").

[19] *See* Biz Carson, *The Yik Yak App Is Officially Dead*, BUSINESS INSIDER (Apr. 28, 2017, 5:52 P.M.), http://www.businessinsider.com/yik-yak-shuts-down-2017-4.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 9/19, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge